*In re* RICE ESTATE

SUPERIOR NATIONAL BANK AND TRUST COMPANY OF
HANCOCK v POYNTER

Docket No. 68492. Submitted April 30, 1984, at Marquette.—Decided
    October 15, 1984.

Mildred S. Rice died testate on September 2, 1981. On April 20,
    1982, a will and three codicils were admitted to probate in the
    Houghton Probate Court. The will made a number of bequests
    to various charities. Aileen M. Poynter, Elizabeth P. White and
    other heirs at law filed petitions for construction of the will and
    codicils, contending that the codicils eliminated the charitable
    bequests and eliminated the charities as residuary beneficiaries.
    Superior National Bank and Trust Company of Houghton was
    appointed the personal representative of the estate and peti-
    tioned the court to instruct it on whether or not it should pay
    federal estate and Michigan inheritance taxes on a protective
    basis, the imposition of tax liability being dependent upon the
    outcome of the petitions for construction of the will and codi-
    cils. The court, Reino S. Koivunen, J., instructed the bank not
    to pay the taxes. Poynter and White appealed as to the pay-
    ment of federal estate taxes. *Held:*

    1. The court had jurisdiction to entertain the bank's petition.

    2. The proper standard for review is to affirm the court's
    actions unless the court abused its discretion. An abuse of
    discretion by a trial court is found only if an unprejudiced
    person, upon considering the facts on which the trial court
    acted, would say there was no justification or excuse for the
    ruling made. The Court of Appeals found no abuse of discre-
    tion.

    Affirmed.

    MacKENZIE, P.J., dissented. She would hold that the court
    did not have jurisdiction to entertain the bank's petition, and
    that, even if it did, upon weighing the probability and magni-

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 4] 42 Am Jur 2d, Inheritance, Estate, and Gift Taxes §§ 305, 307.
[2, 3] 5 Am Jur 2d, Appeal and Error § 772.
[2, 3] 42 Am Jur 2d, Inheritance, Estate, and Gift Taxes § 316.

tude of harm to the interested parties, the court abused its discretion in not ordering payment of the taxes on a protective basis. She would reverse.

OPINION OF THE COURT

1. WILLS — PROBATE COURTS — JURISDICTION — TAXATION.

The probate court has jurisdiction to entertain a petition of a personal representative of a decedent's estate asking the court to decide whether or not the personal representative should pay federal estate and state inheritance taxes on a protective basis (MCL 600.847, 700.21, 700.22[1][k]; MSA 27A.847, 27.5021, 27.5022[1][k]).

2. WILLS — PROBATE COURTS — APPEAL.

An order of a probate court to a personal representative of a decedent's estate not to pay federal estate taxes should be upheld unless the court's action constituted an abuse of discretion.

3. APPEAL — ABUSE OF DISCRETION.

An abuse of discretion by a trial court is found only if an unprejudiced person, upon considering the facts on which the trial court acted, would say there was no justification or excuse for the ruling made.

DISSENT BY MACKENZIE, P.J.

4. WILLS — PROBATE COURTS — JURISDICTION — TAXATION.

*The probate court has no jurisdiction to entertain a petition of a personal representative of a decedent's estate asking the court to decide whether or not the personal representative should pay federal estate and state inheritance taxes on a protective basis (MCL 600.847, 700.21, 700.22[1][k]; MSA 27A.847, 27.5021, 27.5022[1][k]).*

*Richard W. Kedzoir, P.C.* (by *Richard W. Kedzoir*), and *Tercha & Daavettila* (by *James F. Tercha*), for petitioner.

*Kokkonen & Kliber, P.C.* (by *James E. Kliber*), and *Fischer, Franklin, Ford, Simon & Hogg* (by *Thomas F. Sweeney* and *Philip E. Chafree*), for respondents.

Before: MacKENZIE, P.J., and J. H. GILLIS and
J. B. SULLIVAN,* JJ.

J. B. SULLIVAN, J. The respondents, Aileen M.
Poynter and Elizabeth R. White (the sisters of the
deceased), appeal as of right from the order of
Houghton County Probate Court Judge Reino S.
Koivunen dated November 24, 1982, which di-
rected that the personal representative of Mrs.
Rice's estate not pay federal estate taxes and
Michigan inheritance taxes on a protective basis.
This appeal involves only a small portion of a
protracted will contest over the estate's assets,
valued at approximately $6 million.

John and Mildred Rice executed a joint will on
May 17, 1962. John Rice died on March 5, 1964.
The will was probated and executrix Mildred Rice
was discharged upon the completion of probate.
Mrs. Rice died on September 2, 1981. On April 20,
1982, the joint will and three codicils were admit-
ted to probate. Two codicils, dated January 22,
1965, and March 4, 1966 and each entitled "Sec-
ond Codicil", indicated that Mrs. Rice intended to
delete certain bequests totaling approximately
$40,000 made to various charities. The respondents
and other heirs at law filed petitions for construc-
tion of the will and codicils. They contend that the
effect of the codicils is to eliminate the bequests to
the charities as well as eliminating the charities
as residuary beneficiaries. The charities filed their
own petitions for construction. The petitioner, Su-
perior National Bank and Trust Company, was
appointed the personal representative of the es-
tate.

On May 20, 1982, respondents' counsel wrote the
bank and requested that the estate pay the federal
estate tax and the Michigan inheritance tax on a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

protective basis. This would prevent the estate from being charged interest in the event the heirs were successful in their will contest. Respondents also contend that paying the tax on this basis would result in an above-market rate of return in the event the IRS refunded the money. The IRS was paying the following interest rates on such "overpayments": 20% in 1982, a rate adjusted by the prime rate every six months, *i.e.*, 16% from February 1, 1983, to July 31, 1983, and 11% thereafter. If the residuary estate passed to the heirs rather than the charities, the resulting tax liability would be approximately $3 million (federal estate tax) and $750,000 (Michigan inheritance tax). The charities contend that the respondents' proposal would be an unwarranted recognition of the heirs' position in the probate proceedings and would deny the estate a large charitable deduction.

Faced with these conflicting positions and a fast approaching tax filing deadline, the bank's trust committee tentatively decided against paying the taxes on a protective basis. They prepared tax returns which took the maximum charitable deduction and noted the pending controversy. On July 2, 1982, the bank filed a "Petition for Determination of Payment of Federal Estate and Michigan Inheritance Taxes". The trust committee's decision was based on the uncertainty regarding future IRS interest rates and the committee's concerns regarding the delays inherent in the IRS's refunding process. On August 23, 1982, the bank filed the federal estate tax return and requested a payment extension pending the judge's ruling. The return indicates a gross estate of $6,104,375, reduced by charitable deductions of $5,929,375, for a taxable estate of $175,000. No estate tax would be due under this computation.

Hearings were held before Judge Koivunen on July 15, 1982, September 15, 1982, and October 14, 1982. The court took the matter under advisement at the end of each of the hearings. On November 4, 1982, Judge Koivunen ordered the bank not to pay either the federal estate tax or the Michigan inheritance tax. The respondents are not contesting the portion of the order involving the nonpayment of the Michigan inheritance tax.

Respondents argue that the probate court lacks jurisdiction to entertain requests for instructions from the personal representative regarding the filing of federal estate tax returns on a protective basis. They contend that any attempted action taken by the probate court which is not expressly authorized by statute or the Revised Probate Code (RPC) is null and void due to lack of jurisdiction and, consequently, the court lacked jurisdiction to render investment advice and decide whether an estate tax return should be filed. This Court disagrees.

Exclusive jurisdiction is conferred on the probate court by MCL 700.21; MSA 27.5021, which reads:

"The court has exclusive jurisdiction of all of the following:

"(a) Matters relating to the settlement of the estate of a deceased person, whether testate or intestate, who was at the time of death domiciled in the county or was at the time of death domiciled without the state leaving an estate within the county to be administered."

Concurrent jurisdiction is conferred on the court by MCL 700.22; MSA 27.5022, which reads in pertinent part:

"(1) Except where exclusive jurisdiction is given in

the state constitution of 1963 or by statute to some
other court, or where the probate court is denied juris-
diction by the constitution or statutes of this state, in
addition to the jurisdiction conferred by section 21 and
other laws, the probate court has concurrent jurisdic-
tion of any of the following when ancillary to the
settlement of an estate of a decedent, ward, or trust:

* * *

"(k) To order, when requested by an interested per-
son, any instruction or direction to a fiduciary under
this act regarding this act or any applicable Michigan
law affecting an estate within the jurisdiction of the
court."

Along with the RPC, the Revised Judicature Act
states:

"In the exercise of jurisdiction vested in the probate
court by law, the probate court shall have the same
powers as the circuit court to hear and determine any
matter and make any proper orders to fully effectuate
the probate court's jurisdiction and decisions." MCL
600.847; MSA 27A.847.

See *In re Butterfield Estate,* 418 Mich 241, 251;
341 NW2d 453 (1983). This Court holds that these
statutes grant jurisdiction to the probate court to
entertain the bank's petition.

Respondents first argue that there is no specific
authority giving the probate court the power to
render an investment decision. Respondents assert
that the bank's actions represent the actions of a
"timid trustee", and that the bank wishes to shift
investment responsibilities onto the court.

Whether the petition involves an "investment
decision" is open to interpretation. The bank, in
deciding whether to pay the tax on a protective
basis, weighed typical investment factors, such as
rate of return and liquidity. However, paying a tax
is not generally thought of as an investment.

Various uncertainties made it impossible to determine when, and if, such an "investment" would ever be returned to the estate.

Assuming that this is an investment decision, it appears that the personal representative would have to request the court's permission before making such an unusual investment. The bank, as personal representative, is subject to the general rules regarding investments made by fiduciaries. The "prudent investor" rule is codified in Michigan in MCL 700.561; MSA 27.5561, which states:

> "A fiduciary entitled by law to make investments of property of the estate of which he is representative, shall keep the funds of the estate reasonably invested. *Except as the court expressly authorizes, a fiduciary may make only such investments as conform with the provisions of Act No. 177 of the Public Acts of 1937, as amended, being sections 555.201 to 555.203 of the Michigan Compiled Laws, or any investments expressly authorized by the will, or other instrument creating a trust.* Except with the written approval of the court, a fiduciary in his personal capacity shall not engage in a transaction whatsoever with the estate which he represents, nor shall he invest funds in any company, corporation, or association with which he is affiliated, other than as a bondholder or minority stockholder. A fiduciary in his personal capacity shall not pesonally derive any profit from the purchase, sale or transfer of any property of the estate." (Emphasis supplied).

The bank persuasively argues that this statute, read in conjunction with MCL 555.201; MSA 26.85, requires the probate court's express authorization before "investing" with the IRS. The "legal list" of investments which are deemed reasonable is found in MCL 555.201; MSA 26.85 as follows:

> "Trust funds received by any person or corporation acting in a trust or fiduciary capacity and available for

investment shall be invested at the time and in the manner specified in and by the agreement, instrument, or order creating or defining the trust or other holding. *In the absence of investment specifications or limitations in the agreement, instrument, or order, trust property or funds shall within a reasonable time, be invested in such* common or preferred stocks, share accounts of either state or federally chartered building and loan or savings and loan associations, bonds, mortgages, mortgage notes (but not including certificates or evidences of participation or undivided interests in real estate mortgages and mortgage notes), notes, debentures, securities, including securities of companies which are registered with the federal securities and exchange commission under any of the acts enforced by it and whose principal and primary activities are investments in securities of other companies, or other properties, real or personal, or such contracts of annuity or insurance, payable to the beneficiary of such trust, issued by a legal reserve life insurance company duly admitted to operate in the state of Michigan, or annuity contracts written by any company authorized to do such business in the state of Michigan, *as an ordinarily prudent man of intelligence and integrity, who is a trustee of the moneys of others, would purchase,* in the exercise of reasonable care, judgment and diligence, under the conditions existing at the time of purchase, having due regard for the management, reputation and stability of the issuer and the character of the particular securities: Provided, however, That no such funds shall be invested in any securities or property purchased from said trustee, whether a person or a corporation, or from any subsidiary or affiliate of said corporation." (Emphasis supplied.)

Even if the petition before the court involved an investment decision, the investment was not expressly authorized by either the will or the statute. In such a case, the fiduciary is required to request the court's approval. MCL 700.561; MSA 27.5561; MCL 555.201; MSA 26.85.

Respondents also argue that MCL 700.22(1)(k);

MSA 27.5022(1)(k) is inapplicable because the filing of a federal tax return does not involve any Michigan law. However, the personal representative has a duty under the RPC to file all applicable tax returns before being discharged. MCL 700.563; MSA 27.5563. The personal representative is ultimately responsible for distributing all of the assets to interested parties. The final distribution can only be made with the court's approval. Here, the decision whether to file the return and pay the tax materially affected the personal representative's duties. Although the personal representative is the one responsible for management of the estate's assets, when the uncertain outcome of a will contest will materially affect the amount of taxes due, the personal representative should be able to turn to the court for guidance. Fiduciaries have been held personally liable under certain circumstances when estate taxes were paid unnecessarily. See 55 ALR3d 785; 68 ALR3d 1265. But see *In re Baldwin's Estate,* 311 Mich 288; 18 NW2d 827 (1945).

Furthermore, the probate court has concurrent jurisdiction to entertain petitions for instructions from interested parties. MCL 700.22; MSA 27.5022. A personal representative is included in the definition of an "interested person". MCL 700.7(4); MSA 27.5007(4).

For the above stated reasons, the respondents' attack on the court's jurisdiction must fail.

Respondents also contend that, even if the probate court had jurisdiction to decide the matter, Judge Koivunen's decision was an abuse of discretion since an unprejudiced person would conclude that there was no justification or excuse for the decision made, that the decision was contrary to the best interests of the estate and all of its potential beneficiaries, and that the estate will be subject to considerable interest payments if the

heirs' petition for construction prevails. Respondents claim that payment of the taxes on a protective basis would protect all the potential beneficiaries because, even if the will contest is unsuccessful, the amount refunded by the IRS would be greater than the return on a prudent investment.

Both parties agree that the applicable standard of review is whether the probate court's actions represent an abuse of discretion. *In re Norton's Estate,* 251 Mich 167, 171; 231 NW 94 (1930). In *Bruce v Grace Hospital,* 96 Mich App 627, 632; 293 NW2d 654 (1980), this Court stated:

> "An abuse of discretion is found only if an unprejudiced person, upon considering the facts on which the trial court acted, would say there was no justification or excuse for the ruling made. *Seifert v Buhl Optical Co,* 276 Mich 692, 699; 268 NW 784 (1936). See, also, *People v Wilson,* 397 Mich 76, 80; 243 NW2d 257 (1976)."

Judge Koivunen did not abuse his discretion. The respondents argue that the estate was denied a guaranteed 20% rate of return for 1982. However, this Court can take judicial notice of the fact that the IRS's interest rate has historically been below the market rate. The guarantee of 20% is offset by the bank's valid concerns regarding the illiquidity of such an "investment" with the IRS. The fiduciary must make reasonably prudent investments and act in the best interests of the estate. The resolution of the will contest may take several years. In light of this, allowing the estate to take a $5-million charitable deduction, thereby paying no estate tax, was not an abuse of discretion.

Affirmed.

J. H. GILLIS, J., concurred.

MACKENZIE, P.J. *(dissenting).* I respectfully dis-

sent. I cannot agree with the majority's holding
that the probate court was within its jurisdiction
in ordering the personal representative not to pay
the federal estate tax on a protective basis. The
probate court's order did not relate to a matter
within its exclusive jurisdiction under MCL 700.21;
MSA 27.5021 since that order would not preclude
any later federal court determination that the
federal estate tax should have been paid. Federal
taxes are imposed by federal, not state, law. See
*Old Kent Bank & Trust Co v United States,* 362
F2d 444 (CA 6, 1966). Nor can the bank's decision
either to pay the tax or take the charitable deduc-
tion fairly be characterized as an "investment" of
estate assets: hence MCL 700.561; MSA 27.5561 is
inapplicable.

Furthermore, I find without merit the argument
that the probate court's order was proper under
MCL 700.22(1)(k); MSA 27.5022(1)(k), which per-
mits a probate court to instruct or direct a fidu-
ciary as to "any applicable Michigan law affecting
an estate". The payment of federal estate taxes is
a duty imposed by federal law, not state law.
Although MCL 700.563; MSA 27.5563 states that a
probate court may discharge the fiduciary and
close the estate upon allowance of the final ac-
count and payment of all claims and taxes, this
provision does not transform the obligation to pay
federal estate taxes into a duty imposed by state
law.

Even if the probate court did have jurisdiction to
issue the order, I would hold that the order was
clearly an abuse of discretion. If the charitable
claimants ultimately prevail, payment of the fed-
eral estate tax would only *possibly* be detrimental
to them, the extent of the harm dependent upon
delay in payment of the refund and whether the
interest paid on the refund might be less than the

then-prevailing market rate. On the other hand, if respondents should prevail, nonpayment of the federal estate tax, as ordered by the probate court, would *almost certainly* be detrimental to them because of considerable penalties and interest on the overdue estate tax. The probate court acknowledged that it was highly unlikely that the IRS could or would waive payment of interest. Comparing the virtual certainty of harm to respondents by nonpayment of the tax (if they ultimately prevail) with the mere possibility of or slight harm to the charities by payment of the tax (if they ultimately prevail), clearly the court abused its discretion in ordering that the tax not be paid.

I would reverse with costs to appellants.